UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cv-21857-KMM/Becerra

LD ACQUISITION COMPANY 13 LLC,

     Plaintiff,

v.

PALMETTO BAY CENTRE, INC., and
JUSTO A. ATRIO,

     Defendants.

_____/

## REPORT AND RECOMMENDATION[1] ON PLAINTIFF'S PETITION TO REOPEN CASE, ENFORCE PERMANENT INJUNCTION, AND HOLD DEFENDANTS IN CONTEMPT OF COURT AND ORDER ON PLAINTIFF'S MOTION TO STRIKE AMENDED AFFIDAVIT OF SURVEYOR ROLANDO ORTIZ AND DEFENDANTS' MOTION TO STRIKE AFFIDAVIT OF EDWARD WEI

**THIS MATTER** is before the Court on Plaintiff, LD Acquisition Company 13 LLC's ("Plaintiff or "LD") Petition to Reopen Case, Enforce Permanent Injunction, and Hold Defendants in Contempt of Court ("Petition"), ECF No. [18]. Defendants, Palmetto Bay Centre, Inc. ("Palmetto") and Justo A. Atrio ("Mr. Atrio") (collectively "Defendants"), filed their Amended Response to Plaintiff's Petition ("Response"), ECF No. [25]. Plaintiff filed its Reply Memorandum in Support of its Petition ("Reply"), ECF No. [24]. An evidentiary hearing was held before the undersigned on May 11, 2021, ECF No. [44], and continued June 11, 2021, ECF No. [49]. In connection with the Petition, Plaintiff filed a Motion to Strike Defendants' Amended Affidavit of Surveyor Rolando Ortiz ("Motion to Strike Ortiz Affidavit"), ECF No. [26];

---

[1] The Honorable K. Michael Moore, United States District Judge, referred this case to the undersigned for a report and recommendation on the matter. ECF No. [28].

Defendants filed their Response to the Motion to Strike Ortiz Affidavit, ECF No. [27]; and Plaintiff filed its Reply, ECF No. [29].  Finally, on July 23, 2021, Defendants filed a Motion to Strike Affidavit of Edward Wei ("Motion to Strike Wei Affidavit"), ECF No. [63], and on August 5, 2021, Plaintiff filed its Response in Opposition to the Motion to Strike Wei Affidavit, ECF No. [64].  After due consideration of the briefing, the evidence presented at the hearing, the pertinent portions of the record, and being otherwise fully advised in the premises, the undersigned **DENIES** the Motion to Strike Ortiz Affidavit, **DENIES** the Motion to Strike Wei Affidavit, and **RECOMMENDS** that Plaintiff's Petition be **GRANTED**.

## I.      INTRODUCTION

Plaintiff initiated this action seeking to enforce various contracts between the Parties.  ECF No. [1] at 8–12.  Specifically, the issues concerned Plaintiff's right to use and access the roof of a building located at 15715 South Dixie Highway, Cutler Bay, Florida (the "Property") that is owned by Defendants.  *Id.* ¶ 8–11.  The parties initially resolved the lawsuit via a Mutual Release and Settlement Agreement ("Settlement Agreement").  ECF Nos. [50–11], [17].  In connection with the Settlement Agreement, Defendants agreed to the entry of a permanent injunction, requiring them to, *inter alia*, provide Plaintiff and its tenants uninterrupted access to the Property and to cease from interfering with Plaintiff's easements.  *See* ECF Nos. [18–1].

Following the execution of the Settlement Agreement, the Parties filed an Unopposed Motion for Entry of Final Agreed Order ("Unopposed Motion"), ECF No. [16].  On August 7, 2019, the District Court granted the Parties' Unopposed Motion and entered the Parties' proposed order ("Final Order").  ECF No. [17].  Plaintiff alleges that after the entry of the Final Order, Defendants continued interfering with Plaintiff and its tenant, Sprint's, access to the Property by preventing Sprint from accessing its equipment located on the Property.  ECF No. [18] at 4.

On September 25, 2020, Plaintiff filed the instant Petition alleging that Defendants violated the Court's Final Order entered in this case and requesting that this Court: (1) reopen the case and find Defendants in Contempt of the Final Order, (2) award Plaintiff $33,677.89 in attorneys' fees for bringing the initial lawsuit and negotiating the Settlement Agreement, (3) award Plaintiff for any additional fees and expenses incurred in the enforcement of the Court's Final Order and Settlement Agreement, and (4) require Defendants to comply with the Court's Final Order or have Defendants face further sanctions from the Court. *Id.* at 10.  In support of its Petition, Plaintiff filed the Declaration of Rocky Heatherley, a Sprint employee, who stated that he was denied access to the Property and was unable to perform repairs and maintenance authorized under the Site Lease. ECF No. [19] ¶ 10.  He also alleged that on March 2020 Mr. Atrio demanded that Sprint make a payment of $10,000.00 to access the Property. *Id.*

Defendants filed their Response to Plaintiff's Petition to Reopen Case.  ECF No. [25]. Defendants argue that the Petition should be denied on two grounds.  First, Defendants argue that Plaintiff has unclean hands because Sprint's equipment "encroach[ed] beyond the limits of the leasehold" and that Sprint potentially violated the terms of a building permit by "installing twelve radio remote units instead of nine, thus subjecting Defendants to liability for the violation of the building permit." *Id.* at 3.  Defendants contend that they demanded that Plaintiff cure these issues, and instead, Plaintiff filed the instant Petition. *Id.*  In support, Defendants filed and affidavit from a surveyor who stated that Sprint encroached portions of the Property not subject to the lease agreement.  ECF No. [23] at 1.  Second, Defendants contend that the Petition should be denied because they did not violate the Final Order.  ECF No. [25] at 6.  In support, Mr. Atrio stated, in an affidavit submitted with the Response, that he "allowed Plaintiff's tenants to operate its telecommunications equipment without interruption," and that Mr. Heatherley's assertions in his

affidavit were "gross mischaracterizations of the pre-suit relationship between myself, Plaintiff, and Sprint." ECF No. [25–1] at ¶¶ 12, 23.  In fact, Mr. Atrio claims that on March 24, 2020, Edward Wei, Plaintiff's in-house counsel, informed Mr. Atrio of Plaintiff's willingness to comply with Mr. Atrio's cash demands due to Sprint's alleged encroachment of the Site Lease. *Id.* ¶ 16.

On April 20, 2021, Defendants filed a Status Report, ECF No. [32], stating that the Court should deny Plaintiff's Petition because "[a]s of the date of these proceedings, Sprint/T-Mobile USA, Inc. ha[d] unrestricted access to its leasehold," and "Defendants allowed Plaintiff's requested modifications to Sprint's telecom equipment." *Id.* at 9–10.  Given those representations, the Court held a status hearing on April 21, 2021, where Mr. Atrio interrupted the hearing several times to insist that the issue between the Parties had been resolved and there was no need for an evidentiary hearing.  ECF No. [33].  Plaintiff, however, disagreed and sought leave to file a response to Defendants' Status Report, which the Court granted.  ECF No. [38].  On May 4, 2021, Plaintiff filed its Response to Defendants' Case Status Report, ECF No. [41], noting that the dispute between the Parties was ongoing and that Defendants had not allowed Plaintiff to access the site until March 2020, when Sprint expressed the urgent need to remove unsafe equipment that was hanging on the side of the building.  *Id.* at 4–5.

In addition, the Court permitted the parties to file supplemental materials clarifying the basis for Plaintiff's request for attorneys' fees given that the Court did not have jurisdiction to enforce the terms of the Settlement Agreement.  ECF No. [18] at 3–4.  On April 29, 2021, Defendants filed their Notice of Legal Authority, citing to *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1274 (11th Cir. 2012).  ECF No. [40].  In its submission, Plaintiff clarified that, at least before this Court, their attorneys' fees should be recoverable pursuant to the Court's power to find Defendants in contempt for failing to comply with the Final Order.  ECF No. [41] at 2 n.1.

4

II.    MOTIONS TO STRIKE

As noted above, pending before the Court are Plaintiff's Motion to Strike Ortiz's Amended Affidavit, ECF No. [26], and Defendants' Motion to Strike Wei Affidavit, ECF No. [63].  The motions, which are not dispositive, are fully briefed and are **DENIED** for the reasons stated below.

**A.  Plaintiff's Motion To Strike Affidavit Of Mr. Ortiz Is DENIED.**

In his affidavit, Mr. Ortiz avers that he reviewed the legal description of the Property and prepared a survey of the roof of the Property on November 11, 2020.  ECF No. [23] ¶ 3.  Mr. Ortiz states that "Sprint's equipment . . . encroaches beyond the metes and bounds set forth as the leased space."  *Id*. ¶ 4.  Plaintiff moved to strike Ortiz's Amended Affidavit, arguing that the affidavit is irrelevant to the "issue of whether Defendants have violated the Settlement Agreement and this Court's permanent injunction."  ECF No. [26] at 4.  In addition, even if Sprint did encroach on the lease, it would not be a basis for Defendants to defy the Final Order.  *Id.* at 2 n.1.  In addition, Plaintiff argues that the affidavit is deficient in that it fails to set out Mr. Ortiz's qualifications.  *Id.* at 5–6.  In response, Defendants argues that Mr. Ortiz's affidavit is relevant to the issue of whether they complied with the Final Order.  ECF No. [27] at 5.

The Court allowed Mr. Ortiz to testify at the hearing as it was unclear what theory Defendants were proceeding under and whether Mr. Ortiz' testimony would actually be relevant. Although the Court, as discussed more fully below, finds Mr. Ortiz' testimony to be irrelevant, the Court allowed the testimony at the hearing and therefore, **DENIES** the Motion to Strike as **MOOT**.

**B.  Defendants' Motion To Strike Affidavit Of Edward Wei Is DENIED.**

In his affidavit, Mr. Wei states that Plaintiff incurred $33,677.89 in attorneys' fees and expenses through the execution of the Settlement Agreement and entry of the Final Order, ECF No. [62–1] ¶ 4; an additional $82,000.00 leading up to the June 11, 2021 evidentiary hearing, *id.*

¶ 5–6; and additional fees and costs since the hearing, making the total requested amount of attorneys' fees and costs $134,730.51, *id.* ¶ 8–9.  Defendants moved to strike Mr. Wei's Declaration on the grounds that Plaintiff did not present such evidence at the evidentiary hearing and it is immaterial to the Court's consideration.  ECF No. [63] ¶ 13–14.  On August 5, 2021, Plaintiff filed its Response in Opposition to Defendants' Motion to Strike, arguing that the Declaration was properly filed because Plaintiff offered evidence regarding its attorneys' fees at the evidentiary hearing, Mr. Wei was qualified to testify as to Plaintiff's attorneys' fees, and the Court did not bar Plaintiff from filing the Declaration.  ECF No. [64] at 3–4.

Defendants are incorrect.  Mr. Wei testified as to Plaintiff's attorneys' fees at the hearing. ECF No. [48] at 50:2–9.  The affidavit merely supplements the testimony as to the amount Plaintiff seeks and there is no basis to strike it.  As such, the Defendants' Motion to Strike is **DENIED**.

## III.   PLAINTIFF'S MOTION FOR CONTEMPT

It is well settled that "injunctions are enforced through the district court's civil contempt power."  *Thomas v. Blue Cross & Blue Shield Ass'n,* 594 F.3d 823, 829 (11th Cir. 2010) (citing *Alabama v. U.S. Army Corps of Eng'rs,* 424 F.3d 1117, 1134 n.23 (11th Cir. 2005)); *see also Belize Telecom Ltd. v. Gov't of Belize*, No. 05-20470-CIV, 2005 WL 7858276, at *4 (S.D. Fla. Apr. 13, 2005) ("Federal courts have the power to enforce an injunction, if necessary, through contempt proceedings.").  To establish civil contempt, this Court must determine that, by clear and convincing evidence, an underlying order was violated.  *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000); *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990). Specifically, the movant must establish that: "(1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply

with the order." *Tracfone Wireless, Inc. v. Technopark Co.*, 313 F.R.D. 680, 687 (S.D. Fla. Mar. 18, 2016) (citing *Riccard v. Prudential Ins. Co.,* 307 F.3d 1277, 1296 (11th Cir. 2002)).

"Once a prima facie showing of a violation has been made, the burden of production shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply." *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992).  However, a party can only demonstrate an inability to comply "by showing that they have made 'in good faith all reasonable efforts to comply.'" *Citronelle–Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991) (quoting *United States v. Ryan*, 402 U.S. 530, 534 (1971)).  In short, the absence of willfulness is not a defense to a charge of civil contempt, *F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)), nor does subsequent compliance cure the violation.  *Sizzler Family Steak House v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1534 n.5 (11th Cir. 1986).

The Court held an evidentiary hearing on May 11, 2021, ECF No. [48], and June 11, 2021, ECF No. [60].  The Court heard testimony from the following witnesses: (1) Rocky Heatherley, the employment operations manager for Sprint, ECF No. [48] at 98:15–18; (2) William Patrick Grady, a project manager for Sprint, *id.* at 151:6–13; (3) Nicole Cuthbert, a contractor for Sprint who worked as a real estate project manager, *id.* at 176:10–12; (4) David Coca, a construction project manager in charge of overseeing one of the projects at issue, ECF No. [60] at 13:19–14:7; (5) Mr. Atrio, Defendant and owner of the Property, *id.* at 113:15–114:3; (6) Gema Curtis, the corporate representative at Palmetto and Mr. Atrio's daughter *id* at 224:23–225:4; (7) Rolando Ortiz, a surveyor, *id.* at 210:5–24; and (8) Justo Andres Atrio Jr. ("Atrio Jr."), manager of the Property and Mr. Atrio's son, *id.* at 241:14–18.  The Court finds that based on the evidence presented at the evidentiary hearing Defendants violated the Final Order.

**A. Mr. Atrio and Palmetto Denied Plaintiff and Its Representatives Access To The Leased Space.**

Palmetto owns and operates the Property. ECF No. [1] ¶ 8. Mr. Atrio testified that he owns and operates Palmetto and was personally involved in the negotiations of the lease at issue. ECF No. [60] at 200:24–201:1. Indeed, there is no dispute that Mr. Atrio represents Palmetto for purposes of this action.

On November 10, 2009, Palmetto executed a Communication Site Lease Agreement (the "Site Lease") with Clear Wireless, LLC ("Clear Wireless"). *Id.* ¶ 9. Pursuant to the Site Lease, Clear Wireless leased fifty square feet of rooftop space on the Property (the "Leased Space"), as well as the utility and access easements necessary to access and operate the telecommunications equipment that would be located within the Leased Space.[2] *Id.* ¶ 10; ECF No. [50–1].

In 2014, Palmetto sold and assigned its rights, title, and interest in the Site Lease to Landmark Infrastructure Holding Company ("Landmark"), Plaintiff's predecessor-in-interest, for $3,895,000.00 ("Purchase Agreement"). ECF Nos. [1] ¶¶ 1618; [50–2]; [48] at 27:21–25. Palmetto also executed an Easement and Assignment of Lease Agreement ("Easement Agreement") giving Landmark an easement in, to, and over the portions of the Property for telecommunications purposes, and an access easement for ingress and egress, maintenance, and utility services (collectively, the "Easement"). ECF Nos. [1] ¶ 22; [50–3]. By virtue of these agreements, Landmark became the lessor under the Site Lease and Clear Wireless remained as the lessee, ECF No. [48] at 39:13–16, while Palmetto agreed to retain and continue to faithfully

---

[2] At the hearing, the Parties noted a discrepancy in the size of the Lease Space. Indeed, the Site Lease states that the area is fifty square feet of space, while the Easement describes the Leased Space as forty square feet. The inconsistency in the documents is of no moment because whether Sprint encroached the area, be it forty or fifty square feet, is irrelevant to whether Defendants violated the Final Order.

perform its obligations under the Site Lease as they related to its fee ownership in the Property. *Id.* at 36:16–37:6; ECF No. [50–2]. Landmark later assigned the Purchase Agreement, Easement, and Site Lease to Plaintiff, ECF No. [50–4], and thereafter Sprint became the successor-in-interest to Clear Wireless. ECF No. [50–1]. In short, although Palmetto owns the Property, Plaintiff enjoys the exclusive rights to a portion of the roof on the Property, and has easements in, to, and over portions of the Property for telecommunications purposes. In turn, Sprint leases that portion of the roof from Plaintiff such that its legal relationship is with Plaintiff, and not Defendants.

### *The Underlying Action*

On February 1, 2019, Plaintiff requested that Defendants execute two permit applications necessary for Sprint to service and perform an equipment swap of its telecom facilities located on the Leased Space. ECF Nos. [50–6]; [48] at 42:15–24. On February 19, 2019, Plaintiff again demanded that Defendants refrain from tortious conduct and execute the permit applications . ECF No. [50–9]. On April 2, 2019, Plaintiff sent a third letter accusing Defendants of attempting to extract money from Plaintiff in return for Defendants' compliance. ECF No. [50–10] at 4.

On May 8, 2019, Plaintiff filed its Verified Complaint and a Motion for Temporary Restraining Order and Preliminary Injunction. ECF Nos. [1], [4]. Before any hearing could be held on Plaintiff's Motion for a Temporary Restraining Order, ECF No. [4], the Parties entered into the Settlement Agreement. ECF No. [50–11]. Based on the Settlement Agreement, the Parties filed an Unopposed Motion For Entry Of Final Agreed Order. ECF No. [16].

### *The Court's Final Order*

On August 7, 2019, the District Court entered its Final Order. ECF No. [17]. The Final Order stated that the Parties stipulated to the dismissal of Counts One through Four of the Verified

Complaint, and that "Defendants [] agreed and consented to the permanent injunctive relief sought by Plaintiff in Count V of the Verified Complaint." *Id.* at 1.

To that end, the Final Order approved and adopted the Parties' proposed order attached as an exhibit to the Unopposed Motion For Entry Of Final Agreed Order.  ECF No. [16–1].  The Final Order provides that Defendants are: (1) prohibited from "interfering with [Plaintiff's] Easements and [Plaintiff's] tenants' (including Sprint) provision of telecommunication services" at the Property; (2) required to execute all permit applications and other documentation necessary for Plaintiff's tenants' (including Sprint's) permitted use of the Easements; and (3) required to cooperate with the installation of radio frequency signage and barriers.  ECF Nos. [16–1], [17].  At issue is whether Defendants violated the Final Order's prohibition from interfering with the Easements and Sprint's provision of telecommunication services.

### *Defendants' Interference*

In September 2019, Sprint hired third-party contractors to perform an upgrade of its equipment, and to decommission and remove outdated Clear Wireless equipment all of which were located on the Leased Space ("Upgrade Project").  ECF [60] at 15:8–14.  During the Upgrade Project, equipment had been moved to the side of the building in a temporary position and Sprint employees and contractors needed to return to the Property to remove the equipment as a final step in the Upgrade Project.  *Id.* at 103:4–16.  A second and unrelated Sprint project involving the installation of fiber cables (the "Fiber Project") was to be performed after the Upgrade Project. ECF No. [48] at 180:11–22, 182:2–9.

At the evidentiary hearing, various witnesses testified that they met with Mr. Atrio at the Property and were repeatedly told that they could not enter the Leased Space.  In addition, Plaintiff's witnesses testified that, although they had historically gained access to Leased Space

with a key that was left in a lockbox at the entrance of the stairs that lead to the roof, the key had been removed from the lockbox.  ECF No. [60] at 22:9–23.  Based on the testimony of Plaintiff's witnesses, as well as the e-mails between the Parties and among Plaintiff's representatives during the time period at issue, the Court finds that Mr. Atrio personally, and on behalf of Palmetto, interfered with Sprint's provision of telecommunication services in direct violation of the Final Order.  As noted below, the evidence was not only clear and convincing evidence, Mr. Atrio's testimony and conduct left the undersigned with little doubt that he violated the Final Order.

During the evidentiary hearing, David Coca, a construction project manager for Sprint who was responsible for the replacement of equipment in the Upgrade Project, *id*. at 13:16–14:16, testified that Mr. Atrio denied him and his team access to the Leased Space on multiple occasions throughout the Fall of 2019.  *Id.* at 27:19–22.  Specifically, Mr. Coca testified that "during the initial construction there was multiple times where [they] were not allowed to access the site, either the key would be removed, [or] the maintenance person wouldn't allow [them] up on the roof . . . ."  *Id*. at 16:1–7.  Mr. Coca testified that he was personally denied access to the Leased Space at least four to six times.  *Id.* at 27:19–22.  Mr. Coca testified that he contacted Nicole Cuthbert, another Sprint employee when Mr. Atrio denied him access to the Property.  *Id*. at. 18:11–19:17, 21:22–23:6.

Ms. Cuthbert, who also testified at the hearing, sent four e-mails to Plaintiff's representatives describing the interference that Sprint was facing, and Mr. Atrio's conduct specifically.  In her first e-mail, dated September 13, 2019, she advised that Sprint:

> just went through over a year of battling with this LL for my last project.  After Landmark gave Consent for my build (our revenue stream is paid annually to Landmark every April), he tried to circumvent Landmark and offer a very similar lease/rights/space to us directly, in an attempt for us to terminate our lease with you, and begin paying him again.  There is a long history with this man of my predecessor relenting to his constant cash/compensation demands, and when it got

11

> to me, we put our foot down and engaged your team (Ed Wei) above to handle through litigation. I am not going to agree to any $$ if this request is within our rights, I'm hoping that you folks can look over the lease and determine if we need to bring Counsel back in. I notice in the [e-mail] chain once again, he does not put anything in email, and likely calls you directly. Same MO . . . .

ECF No. [50–14], *see also* ECF No. [48] at 178:2–179:5.

Her second email was on September 17, 2019, when she again wrote to Plaintiff's representatives advising that both her construction manager and general contractor were telling her that Mr. Atrio was

> refusing them permission to access the roof to finish our build, and honor his agreement with Edward and local counsel. He is now holding my real estate build hostage until he can extort more money for the fiber team project. My guys have explained to him that the 2 have nothing to do with each other. My CM is calling him one more time to [r]e-iterate that he has to honor this deal/settlement that he signed with landmark, but we need you to be ready to move forward with some sort of litigation or prosecution.

ECF No. [50–15].

On October 1, 2019, she sent her third e-mail stating that Mr. Coca had just called her and that "Atrio is ONCE AGAIN blocking our capability to complete our DO MACRO project for which he signed the settlement with Landmark." ECF Nos. [50–17] at 1 (emphasis in original); The e-mail noted that Mr. Atrio was complaining that the new equipment included twelve radios on the Leased Space and that he had not approve those. *Id.*; *see also* ECF [48] at 181:19–182:18. Ms. Cuthbert complained that the new equipment was on the same pole as the old equipment, and that in any event, Mr. Atrio was not entitled to approve equipment given that he had sold the Site Lease to Plaintiff. ECF Nos. [50–17] at 1.

Finally, on October 9, 2019, Ms. Cuthbert sent another e-mail to Mr. Dunn stating that Mr. Atrio had:

> been beating [her] and now [Mr. Coca] up for well over a year, this is just about a money grab. He has cried that he just wants a "taste", and threatened to block Sprint

> progress at every turn.  He expects Sprint to cut him another big check to go away.
> Please keep in mind, that this began with him trying to get Sprint to terminate our
> lease with Landmark, so he could sneak in the back door for another direct lease
> with Sprint.  AFTER he sold Landmark the revenue stream.

ECF No. [50–18] at 1–2.  She also added that Sprint's plan to make the Site 5G was canceled due to Mr. Atrio and the "difficulty it has presented to all."  *Id.*

At the evidentiary hearing, Ms. Cuthbert testified that, as a contractor for Sprint, she was responsible for managing real estate projects, which included upgrading cellphone towers and rooftops.  ECF No. [48] at 176:10–18.  Ms. Cuthbert explained that she began dealing with Mr. Atrio because she needed his signature in order to obtain certain county permits.  *Id.* at 176:21–177:24.  In addition to testifying as to each of the e-mails above, Ms. Cuthbert noted that because she served as the liaison between landlords and Sprint's legal and construction departments, she conferred directly with Mr. Atrio in an attempt to obtain a resolution regarding Sprint's access to the Leased Space.  *Id.* at 180:13–21, 183:19–184:4.  She noted that Mr. Atrio repeatedly represented that he was "just a little guy . . . going up against the big corporations" and that he "just want[ed] a little taste."  *Id.* at 183:23–25.  Ms. Cuthbert testified that although she informed Mr. Atrio that she did not have permission to offer him more money, he kept calling her cellphone until Sprint legal advised that she no longer had to take the calls.  *Id.* at 184:1–9.  Ms. Cuthbert's testimony, corroborated by the e-mails, and was credible.

Moreover, Ms. Cuthbert's testimony and e-mails strongly corroborate Mr. Coca's testimony that he was denied access after the entry of the Final Order.  Indeed, on October 15, 2019, Mr. Atrio sent an e-mail to Mr. Coca stating that the "economic terms" of the lease needed to be revisited because Sprint was outside the Leased Space.  ECF Nos. [50–19]; [60] at 24:11–25.  In response, Mr. Coca explained that the Upgrade Project would simply replace the existing equipment with new models, and thus the equipment would remain within the Leased Space.  ECF

No. [60] at 26:10–18.  Despite Mr. Coca's explanation, Mr. Coca testified that he was personally denied access at least four to six times.  *Id.* at 27:19–22.  Mr. Coca's testimony, corroborated by contemporaneous e-mails that detail his interactions with Mr. Atrio, was credible.

On January 7, 2020, Mr. Wei demanded that Mr. Atrio allow Landmark's tenants' use of the Property.  ECF No. [48] at 57:20–58:7.  Mr. Wei e-mailed Mr. Atrio and stated that Mr. Atrio had repeatedly denied AT&T and Sprint access to their leased premises.  ECF Nos. [50–20]; [48] at 57:20–58:7.  Although Mr. Atrio's response to Mr. Wei's e-mail denied that he had blocked access to AT&T, the response was silent as to whether he had blocked access to Sprint.  ECF Nos. [50–21]; [60] at 178:14–180:8.  Mr. Atrio demanded $10,000.00 from Landmark to allow Sprint to access the premises to remove equipment.  ECF Nos. [50–25] ¶ 10; [48] at 70:5–16, 84:11–85:8, 92:6–7; 93:14–94:10, 101:8–12; 101:22–102:2, 117:10–15, 147:5–8.

Several months later, in March 2020, Mr. Heatherley, a Sprint manager who was assigned to work on the Fiber Project, met with Mr. Atrio and walked through the Property with him.  ECF No. [48] at 100:6–22, 101:8–12.  Mr. Heatherley noticed that there was equipment from the unfinished Upgrade Project that was dangerously hanging off the building and needed to be removed immediately.  *Id.* at 100:23–101:3.  Mr. Atrio told him that he needed $10,000.00 because Sprint was outside the Lease Space.  *Id.* at 100:18–22.

Following Mr. Heatherley's first visit, Mr. Atrio continued to deny Sprint access to the Property and the Leased Space.  *Id.* at 113:10–12.  Mr. Heatherley testified that during this time period he was denied access to the Leased Space on multiple occasions.  *Id.* at 117:8–20.  On the Monday following his initial visit, Mr. Heatherley coordinated with a construction manager to send a contractor to remove the equipment.  *Id.* at 103:9–17.  When the contractor arrived at the Property, the key had been removed from the lockbox.  *Id.* at 104:25–105:3, 119:1–13.  Mr.

Heatherley e-mailed Mr. Wei on June 12, 2020, informing Mr. Wei that they were "still denied access and now have temp[orary] equipment that is unsafe, especially with the upcoming hurricane season." *Id.* at 107:11–15. In addition, Mr. Heatherley relayed that "[t]he landlord insists Sprint owes him $10,000 for being out of the lease[d] area." *Id.* at 108:7–9. Beyond that, Mr. Heatherley testified that he had at least four conversations with Mr. Atrio in which Mr. Atrio insisted that he would not grant access to the Site for various reasons. *Id.* at 117:8–20. As of August 27, 2020, Sprint did not have access to the building. *Id.* at 111:5–7. Mr. Heatherley's testimony was consistent with the other evidence and was credible.

In November 2020, Bill Grady, a Sprint employee, arranged a visit to the Property because there was an open permit that needed to be closed before they could conclude the Upgrade Project. *Id.* at 151:21–152:7. However, when Mr. Grady arrived, Mr. Atrio denied him access to the Leased Space. *Id.* at 153:1–16; 159:2–22. Specifically, Mr. Grady testified that he called Mr. Atrio to gain access to the Leased Space but Mr. Atrio responded by saying that they were "not allowed to go up on the roof." *Id.* at 153:6–16.

In late 2020 or early 2021, Mr. Grady attempted to follow up with Mr. Atrio for a second time and was, once again, denied access to the site. *Id.* at 154:9–17; 161:10–18. Specifically, Mr. Grady testified that on one occasion he travelled to the site and met with Zack Russell, a contractor, who told Mr. Grady that he had been "thrown off" the Property and not "allowed to go back on the roof." *Id.* at 152:17–153:8. While at the Property, Mr. Grady testified that Mr. Russell gave him Mr. Atrio's phone number. *Id.* at 153:12–16. Mr. Grady testified that he called Mr. Atrio that same day and a lengthy conversation ensued regarding Mr. Atrio's denial of access to the Leased Space and Mr. Atrio's allegations of Sprint's encroachment. *Id.* at 153:15–154:1.

After that conversation, Mr. Grady testified that he tried to follow up with Mr. Atrio again in December 2020 or January 2021 but was again denied access to the Leased Space. *Id.* at 154:9–17. At that point, Mr. Grady testified that he involved Sprint's lawyers, who instructed Mr. Grady to contact Mr. Atrio and advise him of the dangerous equipment on the Site. *Id.* at 154:18–24. Pursuant to such instruction, Mr. Grady testified that he called Mr. Atrio in early January 2021 and informed Mr. Atrio that there "was stuff hanging off the side of the building and it's a very dangerous situation." *Id.* at 155:8–13. In response, Mr. Grady testified that Mr. Atrio agreed to finally let him back on the Property and allowed Sprint access to the Leases Space in February 2021 to remove the temporary equipment. *Id.* at 155:14–25. Mr. Grady testified that the equipment that had to be removed was there for well over one year due to Mr. Atrio's conduct. *Id.* at 156:4–6. Mr. Grady's testimony was concise, clear, and credible.

Plaintiff alleges that Defendants' actions caused its telecommunications equipment to become inoperative. Specifically, on May 4, 2021, Plaintiff filed its Response to Defendants' Case Status Report. ECF No. [41]. Therein, Plaintiff contends that, "[b]ecause of Defendants' conduct, Sprint's telecommunications equipment was off-air for at least nine months." *Id.* at 6. Plaintiff's allegations were supported by the testimony of Rocky Heatherley who testified that "the site went off air." ECF No. [48] at 130:7–11; *see also* ECF No. [50–23].

Plaintiff's witnesses presented credible evidence that Defendants (1) removed the key from a lockbox that gave them access to the roof, (2) denied them access to the Property, and (3) demanded $10,000 from Sprint in exchange for access to the Leased Space. Defendants' witnesses offered no credible response. Although Defendants presented the testimony of Mr. Atrio, Mr. Ortiz, and Mr. Atrio's two adult children who work for Palmetto, only Mr. Atrio had knowledge of the allegations in the Petition. Mr. Atrio, however, consistently refused to answer

16

the questions posed, interrupted the lawyers and the Court, changed his testimony, accused all of Plaintiff's witnesses of perjury, and then submitted an affidavit after the evidentiary hearing changing his testimony (again). In short, Mr. Atrio's testimony only added to the credibility of Plaintiff's allegations.

First, as to whether Defendants removed the key from the lockbox to the rooftop entrance, Mr. Atrio denied that he removed the key denied any knowledge that the key was not available to Sprint. ECF No. [60] at 117:17–19. Instead, he testified that the key lockboxes are usually owned by the carriers, and that other service personnel like the elevator and air conditioning maintenance companies, own their own key lockbox. *Id.* at 117:7–11, 195:24–196:4. His testimony lacks credibility and is contradicted by the evidence.

To be clear, the key is not to the Leased Space or to an area owned by Plaintiff, the key provides Plaintiff and its lessee (Sprint) with access to the door on the Property that leads to the roof. *Id*. at 194:14–18. The Property is owned by Defendants, and as such, the key at issue is not Plaintiff's or Sprint's, rather it is the key to Defendant's Property. Therefore, the testimony that Defendants do not exercise control over the key is not credible. Moreover, the e-mails submitted by Defendants include one from March 17, 2020, before this Petition was filed, where Mr. Atrio was made aware that Sprint did not have access to the key in the lockbox and where he agreed to give them access to the Property for a limited time and did so by providing the access code to the key lockbox. ECF No. [53–19]. The evidence is clear that Mr. Atrio knew that access to the Leased Space had been restricted by the removal of the key from the lockbox.

Second, as to whether he ever denied Sprint or any other of Plaintiff's representatives' access to the Property, Mr. Atrio's testimony on this issue was chaotic, inconsistent, contradictory to the evidence, and in short, lacked any credibility. In the Response to the Petition, Defendants

17

argued that "[t]o the extent that Defendants as landlords demand rent and restrict its sub-tenant from encroaching on space beyond the leasehold" that would not violate the Final Order.  ECF No. [25] at 6.  Indeed, before the evidentiary hearing started that appeared to be the defense, that any limitation to the Property was as to the area that Sprint was encroaching.

However, at the hearing, Mr. Atrio testified that he never denied access to Sprint, and that Sprint was able to complete the construction on the roof by the end of 2019.  ECF No. [60] at 123:20–21, 124:2–10, 129:1–5.  He testified that although he had various conversations regarding the amount of space that Sprint was taking on his Property and whether it was over the Leased Space, *id.* at 129:19–24, 130:6–14; ECF Nos. [53–5] at 5, [53–8] at 1, he never knew of any issue with Sprint being denied access to the Leased Space until Plaintiff filed the Petition.  ECF No. [60] at 150:16–22.  When asked whether he had heard the testimony of Mr. Grady, Mr. Coca and Mr. Heatherley, he responded that "the three of them lied."  *Id.* at 165:14–21.  To the extent that Mr. Atrio tried to make the hearing a battle of credibility between himself and Plaintiff's witnesses, it was a poor strategy.  His testimony at the hearing that he never denied Sprint access was belied by the credible testimony of Plaintiff's witnesses and the e-mails that were introduced into evidence.

His inconsistent testimony did not end there.  He initially testified that he was unaware that there was any problem until the instant Petition was filed.  *Id.* at 172:16–173:14.  Here too, the evidence was directly contrary to his testimony.  Indeed, as he ultimately conceded during cross examination, on January 7, 2020, well before the Petition was filed, he received an e-mail from Mr. Wei that stated that he, Mr. Atrio, had "repeatedly denied access to ATT and Sprint to their leased premises."  *Id.* at 177:15–25, 178:6–15; ECF No. [50–20].

Because Mr. Atrio repeatedly interrupted the lawyers and often provided unresponsive answers, the Court gave his counsel leave to file an affidavit if there was anything that Mr. Atrio had not been permitted to say.  The Court was very specific in its instructions that this was not an opportunity to revise or contradict his sworn testimony in Court.  ECF No. [60] at 267:4–14.  Nevertheless, Mr. Atrio submitted an Affidavit that entirely contradicted his testimony at the hearing.  ECF No. [58].  Now, Mr. Atrio claims that he did deny access to the Property but that it was in connection with the Fiber Project stating that he "did deny Sprint permission to start the [] fiber project, because Sprint would not pay to use the space inside my cable conduit."  *Id.* ¶¶ 30, 32, 52.  Mr. Atrio's Affidavit now offers a third version of events, that he did deny Sprint access to the Property but only in relation to the Fiber Project (as opposed to the argument that Sprint's equipment fell outside the Leased Space).  The problem, for Mr. Atrio, is that although there was testimony about the Fiber Project at the hearing, there was no testimony that the Fiber Project had any connection with his refusal to let Sprint on the Property.

Finally, as to whether Mr. Atrio demanded $10,000 from Sprint, Mr. Atrio testified that it was customary in the industry to ask for additional monies when equipment encroached upon a leased area.  ECF Nos. [60] at 190:21–191:7; [25–1] ¶ 4.  As such, there is no factual dispute here, Mr. Atrio demanded additional money directly from Sprint, Plaintiff's lessee.

Defendants' other witnesses did not provide relevant testimony nor could dispute Plaintiff's evidence.  Specifically, Defendants called Mr. Ortiz, the land surveyor who concluded that, assuming the Leased Space was forty square feet, some of the equipment was outside the Leased Space.  ECF No. [60] at 210:2–6, 210:22–24, 211:17–21, 212:16–213:10, 223:2–10.  Mr. Ortiz had very limited knowledge, but in any event, his testimony is irrelevant not only because

Defendants no longer claim that their denial of access was based on the encroachment of the Leased Space, but because Sprint's encroachment, even if true, is not a defense.

Ms. Gema Curtis, the corporate representative at Palmetto and Mr. Atrio's daughter, testified and stated that she was responsible for keeping "track of the paperwork and e-mails that were coming in." *Id.* at 226:6–7. Mr. Curtis testified that "no e-mails had been received from [Landmark] requesting access that [had] been denied." *Id.* at 227:1–3. Ms. Curtis also testified she never removed any key form the building. *Id.* at 229:7–9. However, Ms. Curtis testified that she is not always at the Property and that, since Covid-19, she works from home and only goes "to the building when [she] is needed at the building." *Id.* at 233:1–3. In addition, she stated that she is not always aware when subcontractors enter the Property to gain access to the roof. *Id.* at 234:12–18. Indeed, Ms. Curtis testified that it is not her job to communicate with any of the telecommunication tenants. *Id.* at 235:15–17. Although Ms. Curtis was credible, her testimony did not shed any light on the matter at hand. The fact that there are no e-mails that she saw from Plaintiff or Sprint is of no moment as the testimony presented showed that the contact with Mr. Atrio was in person, and in fact there were e-mails with Mr. Atrio regarding his interference.

Finally, Mr. Atrio Jr., Mr. Atrio's son and the manager of the Property testified that he prepared the leases, was responsible for having the contractors maintain the building, and would interact with the current and future tenants of the building. *Id.* at 241:23–242:5. However, Mr. Atrio Jr. testified that although he is aware of the leases on the roof, he is not familiar with the details of the leases. *Id.* at 242:9–10. Mr. Atrio Jr. testified that although he is usually in the building when a subcontractor arrives, "most of the time [he] won't even see the contractors go up." *Id.* at 243:5–8. Although he was present during one meeting with Sprint in connection with the removal of the old equipment, *id.* at 245:21–246:18, he testified that he did not recall any

person by the name of David Coca, Shavonne, Ellen Bacho, or Nicole Cuthbert.  *Id.* at 248:23–249:11, 250:10–11.  In short, his involvement in this matter was peripheral, at best, and could provide no testimony that would either corroborate or contradict any of the evidence before the Court.

**B.  Defendants Should Be Held In Contempt for Violating the Court's Final Order.**

As noted above, the Court must determine, by clear and convincing evidence, that the Final Order was violated.  *See McGregor*, 206 F.3d at 1383.  As an initial matter, Plaintiff must establish that: (1) the Final Order was valid and lawful; (2) the Final Order was clear and unambiguous; and (3) Defendants had the ability to comply with the Final Order.  *See Tracfone Wireless*, 313 F.R.D. at 687.  The evidence here easily meets that burden.

**1.  Plaintiff Has Satisfied All Elements Required For A Finding Of Civil Contempt.**

First, the Final Order is valid and lawful.  Indeed, this point is undisputed.  There is no dispute that the Final Order is a valid and lawful order of this Court.  ECF No. [60] at 182:20–22 ("Q: Do you have any dispute that this is a valid order of the Court? A. No.").  Moreover, there is no dispute that Defendants were required to comply.  *Id*. at 187:5 ("I have to comply with the order.").  The Court possessed appropriate subject matter jurisdiction over the dispute and personal jurisdiction over the parties.  Indeed, the Final Order was *agreed to* by Defendants, who were represented by counsel.  Finally, the Final Order was not appealed, and the time to do so has long expired.  Plaintiff satisfied, and Defendants pose no objection, the first element by clear and convincing evidence.

Second, the Final Order is clear and unambiguous.  An order is clear and unambiguous when "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed."  *Abbott Laboratories v. Unlimited Beverages, Inc.*, 218

F.3d 1238, 1240 (11th Cir. 2000) (citations omitted).  However, "[a] consent judgment need not recite every possible way in which a violation might occur when the proscribed conduct is readily ascertainable to an ordinary person."  *Id.* at 1241.  In this case, the Final Order was a negotiated document agreed to by Defendants who were represented by counsel.  ECF No. [50–13].  Indeed, Mr. Atrio admitted at the hearing that he "clearly understood" the Court's Final Order and knew it had to be followed.  ECF No. [60] at 184:6–9; 187:5.  Defendants have not alleged that the Final Order was confusing or that they did not understand their responsibilities.  *Id.* at 184:6–9.  Again, Mr. Atrio admitted that he understood the parameters of conduct required under the Final Order.  *Id.*  In short, there is no dispute that the Final Order is clear and unambiguous.

Finally, Defendants had the ability to comply with the Final Order.  Defendants own the Property where the Site is located and there is nothing in the record showing that they were unable to comply.  Having met each of the elements, the burden now shifts to Defendants.  Although Defendants can defend on the ground that they were unable to comply.  Defendants, however, take the position that they did comply and that they did not interfere or limit the access to the Site in any way.  Indeed, Defendants failed to offer any evidence that they were unable to comply with the terms of the Final Order.

### 2.  Defendants' "Defenses" Are Without Merit.

"[I]n a civil contempt proceeding the question is not one of intent but whether the alleged contemnors have complied with the court's order."  *Federal Trade Commission v. Latrese & Kevin Enterprises, Inc.*, No. 3:08-cv-1001-J-34JRK, 2012 WL 12952608, at *4 (M.D. Fla. Nov. 19, 2012); *see also F.T.C. v. Laptop & Desktop Repair, LLC*, No. 2016 WL 10805749, at *4 (N.D. Ga. Dec. 8, 2016) ("Substantial, diligent, or good faith efforts are not enough; the only issue is compliance. . . In civil contempt proceedings the question is not one of intent but whether the

alleged contemnors have complied with the court's order." (internal quotation marks omitted));
*FTC v. Leshin*, 618 F.3d 1221, 1232–33 (11th Cir. 2010) ("We do not focus on the subjective
beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their
conduct complied with the order at issue." (internal quotation marks omitted)).

Because Plaintiff has established each element of civil contempt by clear and convincing
evidence, the burden of production to show an inability to comply with the Final Order shifts to
Defendants. *Commodity Futures Trading Comm'n*, 950 F.2d at 1529. However, Defendants do
not argue that they were unable to comply, instead, they argue that the Court should deny
Plaintiff's Petition because (1) Plaintiff has not proved the elements of its case, (2) Plaintiff has
claimed equitable relief while having unclean hands, and (3) Plaintiff has not demonstrated any
actual injury. ECF No. [59] at 1.

As to their first argument, Defendants contend that Plaintiff has failed to prove the
elements of its case because Plaintiff did not provide any evidence that Defendants refused to sign
the necessary permits for Sprint to use its telecom equipment; Plaintiff did not provide any
evidence that Defendants did not allow Plaintiff to install its necessary signage at the Site; and
Plaintiff presented no evidence that it lost any business relationships or money due to Defendants'
conduct. *Id.* at 9. Defendants' first argument has no legal merit and has no support in the facts.
Indeed, it totally ignores the interference that is alleged, the failure to allow Plaintiff's tenant,
Sprint, on the Leased Space. The evidence of that is overwhelming. As detailed above, Plaintiff
presented credible testimony and contemporaneous e-mails that show Defendants prevented
Sprint from access to the Leased Space. Although Mr. Atrio attempts to direct the Court's
attention to time periods when he did allow Sprint access to the Leased Space, that argument
ignores the evidence of all the other occasions when he denied Sprint access.

As to their second argument, Defendants contend that their "demand for rent and restrict[ing] Sprint from encroaching on space beyond the leasehold does not appear barred by the Court's Order." *Id.* at 12.  Instead, Defendants argue that the evidence demonstrates that "Sprint encroached beyond its easement, and that Plaintiff has allowed it." *Id.* at 13.  Defendants' second argument has no legal merit as the encroachment would not create some exception to the Final Order.  Indeed, even if Sprint's equipment was outside the Leased Space, the encroachment would have been inches or feet from the limits of the Leased Space such that there could be no way that Defendant could have limited access to one without necessarily limiting access to the other.  In addition, there is no "unclean hands" exception as Defendants argue.  However, even if there were such exception, there is not sufficient evidence on this record to show that Plaintiff has "unclean hands" such that it cannot avail itself to the Court's power to enforce its orders.  The issue here is simple, did Defendants violate they Final Order or not.

As to their final challenge, Defendants argue that Plaintiff has not demonstrated any actual injury.  *Id.*  Specifically, Defendants contend that "Plaintiff presented no evidence showing any loss of money or other substantial injury due to Defendants' alleged conduct." *Id.*  Here, again, Defendants' argument has no merit.  Plaintiff claims that it is owed its attorneys' fees as it had to institute this action in order to get Defendants to comply.  Plaintiff is correct, it was required to expend its money to force Defendants into compliance with the Court's Order.

### C.  Plaintiff Is Entitled To Attorneys' Fees.

Upon making a finding that a party is in violation of a court order, a district court is given broad discretion when determining the appropriate sanction.  *See Tom James Co. v. Morgan*, 141 Fed. App'x 894, 900 (11th Cir. 2005) ("[T]he district court, in its discretion, may exercise its wide power to impose fines for disobedience to its orders.") (internal quotations and citations

omitted); *Howard Johnson Co., Inc.*, 892 F.2d at 1519. Specifically, in civil contempt proceedings, courts may impose sanctions to either (1) coerce the nonmovant into compliance or (2) compensate the movant for the losses sustained. *Davenport v. AWP, Inc.*, No. 8:18-cv-1064-T-36CPT, 2019 WL 2453813, at *3 (M.D. Fla. Feb. 6, 2019) (citing *Tom James Co.*, 141 F. App'x at 899).

Courts routinely award attorneys' fees and costs as a sanction for civil contempt. *Tracfone Wireless*, 313 F.R.D. at 690 (awarding attorneys' fees and costs incurred in filing a motion to reopen case to enforce a permanent injunction). The court, however, should only award those fees that are "necessary to secure compliance with the [c]ourt's order and obtain compensation for damages." *Belize Telecom Ltd.*, 2005 WL 7858276, at *7 (citing *Abbott Laboratories*, 218 F.3d at 1242). In awarding fees for contempt, the court is not required to conduct a lodestar analysis. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Olympia Holding Corp.*, 140 Fed. Appx. 860, 864 n.1 (11th Cir. 2005) ("Sanctions for civil contempt are not equivalent with typical payment of attorneys' fees, and civil contempt sanctions do not require the use of the lodestar method."). However, a court should only award those fees that were reasonably and necessarily incurred by the moving party in procuring compliance with a court's order. *Abbott Laboratories*, 218 F.3d at 1242. For example, a court should consider "the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in bringing about compliance, and the amount of the contemnor's financial resources and consequent seriousness of the burden to him." *Matter of Trinity Indus., Inc.*, 876 F.2d 1485, 1493–94 (11th Cir. 1989) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947)).

As of the date of the May 11, 2021 evidentiary hearing, Plaintiff claims that it incurred approximately $115,677.89 in attorneys' fees as a result of Defendants' misconduct—all of which could have been avoided had Defendants simply complied with the terms of the Site Lease, Easement, Settlement Agreement, and Final Order.   ECF No. [48] at 50:2–9, 62:14–21. Specifically, Plaintiff claims that it incurred $33,677.89 in attorneys' fees in bringing the initial lawsuit and negotiating the Settlement Agreement and Final Order.  *Id.* at 50:2–9.  Plaintiff further states that it incurred approximately $82,000.00 in attorneys' fees in prosecuting Defendants' violation of the Final Order.  *Id.* at 62:14–21.  In addition, Plaintiff claims that it continues to incur attorneys' fees and costs as a result of Defendants' misconduct, including, the costs associated with preparing the instant Motion.  *Id.*   On July 21, 2021, Plaintiff submitted the Affidavit of Mr. Wei which stated that the total amount Plaintiff was requesting was $134,730.51 in attorneys' fees and costs.  ECF No. [62–1] ¶ 9.  The Court requested that Plaintiff submit its billing records, ECF No. [65], which Plaintiff's filed with the Court.  ECF No. [66].  Defendants argue that Plaintiff is not entitled to attorneys' fees because it has failed to present evidence showing any injury or loss due to Defendants' alleged conduct.  *Id.* at 17:16–18:4.

Here, the undersigned finds that Plaintiff is entitled to its reasonable attorneys' fees and costs incurred as a result of Defendants' violation of this Court's Final Order.  Specifically, the Court finds that sanctions in the form of attorneys' fees and costs are appropriate given Defendants' repeated failure to comply with the Court's Order, as set forth above.  Although the parties do not contend that Defendants are currently violating this Court's Final Order, the impetus for Defendants' renewed compliance with the Court's Order was undoubtedly Plaintiff's filing of the instant Motion.  Indeed, the record reflects that Plaintiff did not fully allow Plaintiff access until February 11 or 12, 2021, after the instant Motion was filed.  ECF No. [48] at 155:15–

25.   Accordingly, Plaintiff is entitled to recover those fees and costs incurred in procuring Defendants' compliance with the Court's Final Order.

Although Plaintiff's are entitled to attorneys' fees, the amount requested is not reasonable. First, Plaintiff is not entitled to the $33,677.89 incurred in bringing the initial lawsuit and negotiating the Settlement Agreement because such fees are separate and apart from Defendants' violation of the Final Order.   To the extent that Plaintiff requests that amount because the Settlement Agreement allows for it, the Court does not have jurisdiction to enforce the Settlement Agreement and therefore, there are no grounds to award that part of their attorneys' fees.

As to the remainder, the Court has reviewed the billing records that were provided and finds that a reduction is necessary.  The Court notes that multiple attorneys worked on the matter, despite the legal matter being straightforward and the filings in the case being fairly simple.  As such, the Court finds that the total amount should be reduced and that the reasonable amount of attorneys' fees for filing the Petition and the evidentiary hearing is $50,000.00.  The amount is limited to the attorneys' fees because although there was evidence in the record that Defendant interfered with Plaintiff's relationship with Sprint, and that Sprint's system went off-air and Sprint decided not to progress to a 5G site at the Leased Space due to Defendants' conduct, no evidence as to the damages incurred, if any, was presented.  Although Defendants may be correct in that observation, they are not correct that there was no harm—as Plaintiff had to incur attorneys' fees in order to have Defendant comply with the Court's Final Order.  As such and given that there is nothing in the record that would suggest any hardship in paying the amount, the Court finds that $50,000.00 is the reasonable.

## IV.    RECOMMENDATION

In accordance with the foregoing Report and Recommendation, the undersigned hereby **RECOMMENDS** that Plaintiff's Petition, ECF No. [18], be **GRANTED**.  Plaintiff should be awarded a total of **$50,000.00** in attorneys' fees.  In addition, because the motions to strike are not dispositive, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion to Strike Defendants' Amended Affidavit of Surveyor Rolando Ortiz, ECF No. [23], is **DENIED**, and Defendant's Motion to Strike Affidavit of Edward Wei, ECF No. [63], is **DENIED.**

## V.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation within **TEN (10) DAYS** of the filing of this Report and Recommendation.  The Parties have had ample time to present argument and evidence to the Court, including the opportunity to present their Proposed Findings of Facts and Conclusions of law.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).  Any request for an extension of time to file the Objections must be made within **THREE (3) DAYS** of the filing of this Report and Recommendation.

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 26th day of August, 2021.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**

28